NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

DEBORAH LANZA,

        Plaintiff,

v.

PATRICK R. DONAHOE[1], UNITED STATES POSTAL SERVICE, JOHN DOES I-V, and ABC CORPORATIONS I-V,

        Defendants.

Civil Action No.: 10-6737 (PGS)

**MEMORANDUM AND ORDER**

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on a Motion for Summary Judgment [ECF No. 20] by Defendants Patrick R. Donahoe ("Donahoe") and the United States Postal Service (the "USPS") (collectively "Defendants"). Plaintiff Deborah Lanza ("Plaintiff"), a former employee of the USPS, filed this action against Defendants for gender discrimination violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. ("Title VII"), disability discrimination violating the Rehabilitation Act of 1973, 29 U.S.C. § 791, et seq. (the "Rehabilitation Act") and the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. (the "ADA"), and retaliation based on Plaintiff's worker's compensation claim and light duty assignment.

Plaintiff alleges that employees of the USPS discriminated against her because of her gender and alleged disability, and that the USPS retaliated against her because she applied for

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Postmaster General Patrick R. Donahoe has been substituted for former Postmaster General John E. Potter in this action.

workers' compensation, and was on light duty assignment. Defendants move for summary judgment on all claims, arguing that Plaintiff cannot establish a prima facie case for gender discrimination under Title VII or disability discrimination under the Rehabilitation Act or the ADA. Defendants further argue that Plaintiff's retaliation claim is also subject to dismissal. Defendants' Motion is opposed by Plaintiff. The Court, having considered the submissions of the parties, decides the Motion on the papers pursuant to Fed. R. Civ. P. 78. For the reasons outlined below, Defendants' Motion for Summary Judgment is granted.

**I.     Background**

Plaintiff began her career with the USPS when she was hired as a letter carrier in the Toms River Post Office in January 1988. Defendants' Statement of Material Facts ("DSMF") at ¶ 1, 2. Plaintiff entered the Associate Supervisor Program at USPS and became a permanent associate supervisor in 1999. DSMF at ¶ 3. In April 2003, Plaintiff transferred to the Red Bank Post Office (the "RBPO"). DSMF at ¶ 4.

On March 20, 2006, Plaintiff injured her left knee in a workplace accident, necessitating surgical repair about one year later (July 2007). Though, Plaintiff's position did not typically involve heavy lifting or strenuous physical activity, thereafter, Plaintiff received limited duty status from the USPS. DSMF at ¶ 23.

In December 2008, Plaintiff was working as a "Supervisor Customer Service" (EAS-17) at the RBPO. Declaration of Paul Lagana ("Lagana Decl.") at ¶ 10). As a Supervisor Customer Service (EAS-17), Plaintiff was responsible for supervising postal carrier activities and routes, supervising the distribution and dispatch of mail and mail handling activities, supervising USPS window services to the public, establishing work schedules for employees at the post office, analyzing data and making recommendations to improve USPS operations, supervising and

participating in record-keeping, and supervising a medium-size group of craft employees. DSMF at ¶ 10. Plaintiff's immediate supervisor in those duties was Postmaster Paul Lagana, and Lagana's immediate supervisor was Carl Fascio.

As Postmaster (EAS-22), Lagana was responsible for managing the budget of the post office, implementing local USPS procedures and safeguards, caring for USPS equipment and facilities, administering contracts, and supervising a large group of employees, among other things. DSMF at ¶ 10. The Postmaster is ultimately responsible for the smooth operation of the post office.[2] DSMF at ¶ 13. Between June 2008 and December 2008, Plaintiff and Lagana worked together without incident. DSMF at ¶ 19. In that time, Plaintiff never complained to Lagana that women were treated differently at work (DSMF at ¶ 29), that she was treated differently than other employees due to an alleged disability (DSMF at ¶ 30), or that she had ever been subjected to discrimination at work. DSMF at ¶ 31.

**II.    Facts**

The primary goal of the USPS is to ensure that mail is processed and delivered in a timely fashion. Therefore, mail must be transferred from the post office to the processing plant after business hours each day without exception. No mail is to be left in the post office. The RBPO transfers all of its mail to the Monmouth Processing Plant ("Monmouth Plant") seven miles away. DSMF at ¶ 35. If the mail is not transferred to the Monmouth Plant in a timely fashion, then customers paying for first class mail will not receive the appropriate level of (first-class) service

---

[2]    Plaintiff disputes this fact by asserting that Lagana testified that supervisors had the same responsibility as he did as to the operation of Red Bank, and that Lagana and the supervisors were on call 24/7. However, this fact is not in dispute. The citation to Lagana's deposition testimony does not support Plaintiff's assertion that Lagana testified that supervisors have the same responsibility for post office operations as he does. Further, the fact that supervisors are on call 24/7 does not create a dispute of fact as to the Postmaster's ultimate responsibility for the operation of Red Bank. Being on call 24/7 does not equate with having the ultimate responsibility for the operations of the Red Bank.

3

purchased. It is therefore imperative that the supervisor on-duty ensure that the mail has been transferred to the Monmouth Plant before leaving the post office. DSMF at ¶ 37.

On December 9, 2008, Lagana was scheduled to work from 7:30 a.m. to 6:00 p.m, and Plaintiff was scheduled to work from 4:00 a.m. to 2:00 p.m. DSMF at ¶ 39. Sometime between 9:30 p.m. and 9:45 p.m., Plaintiff received a telephone call from another supervisor at the RBPO, informing her that the mail had not been transferred to the Monmouth Plant, due to a power outage at the RBPO. DSMF at ¶ 44. Plaintiff advised that supervisor to contact Lagana, (Deposition of Deborah Lanza ("Lanza Dep."), 56:20-21), but she did not, herself, attempt to contact Lagana[3] because her home phone was not capable of making long distance calls. *Id.* at 56:23-25, 57:20-58:4. On December 10, 2008, Plaintiff went to the RBPO around 3:00 a.m., and discovered that the mail still had not been transferred to the Monmouth Plant. DSMF at ¶ 48. Plaintiff and Lagana spoke on the telephone sometime between 2:00 a.m. and 3:20 a.m. Then, Plaintiff called Mary Ducey at the Monmouth Plant and made arrangements to transfer the mail to the Monmouth Plant immediately. (Lanza Dep., 60:10-19). When Lagana arrived at the RBPO, he expressed concern about the potential fallout over the failure to transfer the mail to the Monmouth Plant on December 9, 2008. *Id.* at ¶ 53. Lagana feared that he would lose his job as a result of the failure to transfer the mail for processing. *Id.* at ¶ 54. Ultimately, he received a "paper suspension"[4], in lieu of a 14-day suspension, as a result of the events of December 9, 2008. (Lagana Decl., ¶ 44; Lanza Dep., 75:17-22).

---

[3] It is Lagana's position that if an employee is made aware that mail has been left at the post office, the employee has a duty to take all necessary steps to ensure that the mail is sent to the processing plant. DSMF at ¶ 47.

[4] Paper suspensions are letters issued, in lieu of actual suspensions, to be placed in an employee's personnel file for a set period of time. Employees typically do not miss work and are not docked pay for paper suspensions. *Id.* at ¶ 59.

One of Lagana's duties as Postmaster was to impose discipline on employees whose performance falls below USPS standards. *Id.* at ¶ 60. Lagana conducted a Pre-Disciplinary Interview with Plaintiff on December 11, 2008. *Id.* at ¶ 62. Plaintiff claims that prior to the Pre-disciplinary Interview, Lagana told her that Fascio and Vito Citta ("Citta"), District Manager for the USPS Central New Jersey District, wanted "heads to roll" for failing to transfer the mail on December 9, 2008. *Id.* at ¶ 63. On December 30, 2008, Lagana called Plaintiff into his office, and served a Notice of Proposed Removal ("NPR") upon Plaintiff for failing to ensure the transfer of the mail to the Monmouth Plant as the on-duty supervisor. *Id.* at ¶ 66. Plaintiff received a NPR as a result of the mail not being sent from the RBPO to the Monmouth Plant on December 9, 2008. (Lagana Decl., Ex. 4 (Doc. No. 20-3). The NPR was dated December 23, 2008 and signed by Lagana. *Id.*

The NPR explicitly states "[t]his is advanced written notice that it is proposed to remove you from the Postal Service no sooner than 30 calendar days from the date of your receipt of this letter." *Id.* It continues:

> You and/or your representative may do either of two things at this point.
>
> - You may request that the issues involved in this Notice of Proposed Removal be mediated with the assistance of outside mediators appointed by the Federal Mediation and Conciliation Service. If you wish to take advantage of this option, you should make your request in writing within ten (10) calendar days of the date of your receipt of this Notice of Proposed Removal.
>
> - If you do not wish to participate in mediation, you may appeal this Notice of Proposed Removal by filing an answer within ten (10) calendar days of the date on which you received this proposal.

The NPR also states: "[i]f you initially request mediation and no satisfactory resolution of the matter is achieved, you must submit your written response to me within ten (10) calendar days of the date of the mediator's letter indicating that no agreement was reached in mediation." *Id.*

5

As a USPS Supervisor, Plaintiff shares the Postmaster's duty to discipline employees for substandard performance. Indeed, Plaintiff has imposed discipline on other USPS employees more than 20 timesin her career. *Id.* at ¶ 72. It follows that Plaintiff understood the effect of the NPR, namely, that she had the right to contest it and 30 days to appeal the discipline, as well as the right to remain at work. *Id.* at ¶ 74.

After receiving the NPR on December 30, 2008, Plaintiff left work prior to the end of her shift, and did not return. That same day, Plaintiff was examined by her physician, and shortly thereafter, Plaintiff applied for Worker's Compensation from the USPS. *Id.* at ¶¶ 85, 86. Plaintiff has not returned to work at the RBPO since that day. *Id.* at ¶¶ 68, 84.

On January 5, 2009, six days after receiving the NPR, Plaintiff completed a form captioned "Information for Pre-Complaint Counseling", in which she alleged gender and disability discrimination by the USPS. Additionally, Plaintiff appealed the NPR, and the matter was submitted to mediation. *Id.* at ¶ 76. On April 3, 2009, the USPS issued a Letter of Decision regarding Plaintiff's NPR. The Letter of Decision reduced the NPR to a Letter of Warning in Lieu of a Seven (7) Day Suspension. (Declaration of Mark C. Orlowski, Esq. ("Orlowski Decl."), Ex. 1, Exs. DL-5 and DL-6 of Lanza Dep. (Doc. No. 20-6). Plaintiff continued her appeal despite the Letter of Decision. *Id.* at ¶ 79.

From December 30, 2008 until April 2009, no one employed by the USPS told Plaintiff that her position had changed.[5] (Lanza Dep., 106:20-107:7, 110:16-111:5). On June 18, 2009,

---

[5] While Plaintiff asserts that this fact is in dispute, she testified at her deposition as follows:

    Q:    Okay. Between December 30th, 2008 and April 2009 did anyone from the Postal Service tell you not to come back to work?
    A:    No. (Lanza Dep., 106:20-23).

6

Richard Acker ("Acker"), USPS Manager for Labor Relations in the Eastern Area, issued a letter addressed to John F. Farrell, Jr., New Jersey State President of the National Association of Postal Supervisors, rescinding the NPR previously issued to Plaintiff. (Orlowski Decl., Ex. 1, Ex. DL-7 of Lanza Dep.). Plaintiff received a copy of Acker's letter by late June 2009. (Lanza Dep., 109:6-17). Upon receipt of that letter, Plaintiff was aware that the discipline had been completely rescinded, and that she was free to return to work at the same pay, and in the same position as she had on December 30, 2008. (Lanza Dep., 109:14-110:15). As of January 10, 2012, Plaintiff still had the right to return to work at the USPS, though she had not done so.[6] (Lanza Dep., 137:6-13).

## II. Analysis

### A. Summary Judgment Standard

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all

---

Further, the citations to Plaintiff's deposition testimony and Certification (Doc. No. 25), provided by Plaintiff in an attempt to create a factual dispute, here do not contradict her testimony above, nor does her unsupported assertion that she was informed that her office was taken away. Accordingly, the Court finds this fact to be undisputed.

[6] While Plaintiff attempts to dispute this fact, for the reasons listed above in Footnotes 4 and 5 the Court finds that there is no factual dispute here.

7

justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (*quoting Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fidelity Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48. If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor – that no reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 Fed. App'x. 222, 227 (3d Cir. 2007).

**B. Title VII**

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against, any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *42 U.S.C. § 2000e-2(a)(1)*.

Plaintiff contends that she was subjected to unlawful discrimination on the basis of her gender. Plaintiff alleges that she is a member of a protected class based upon her gender and was

qualified for the position she held. She further asserts that she was subjected to an adverse employment action as a result of the USPS's efforts to terminate her. Plaintiff claims that the adverse employment action occurred under circumstances that could give rise to an inference of discrimination, as Lagana—a similarly situated employee who is outside of the protected class—was treated more favorably than Plaintiff in that he received less severe discipline.

Defendants assert that Plaintiff has failed to establish a *prima facie* case of sex discrimination. Specifically, Defendants argue that Plaintiff did not suffer an adverse employment action as she was never terminated and the NPR was completely rescinded. Defendants also contend that Plaintiff has failed to establish that any comparable employees were treated differently than she was, as Plaintiff and Lagana are not similarly situated employees.

Claims brought pursuant to Title VII are analyzed under the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), and later clarified in *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981), and *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993). The analysis under *McDonnell Douglas* has three steps. First, plaintiff must establish a *prima facie* case of discrimination. *McDonnell Douglas, 411 U.S. at 802*. To establish a *prima facie* case of gender discrimination under a disparate treatment theory, the plaintiff must demonstrate: (1) that she is a member of a protected class; (2) that she is qualified for the position; (3) that she was subjected to an adverse employment action; and (4) that the adverse employment action occurred under circumstances that could give rise to an inference of intentional discrimination. *Makky v. Chertoff,* 541 F.3d 205, 214 (3d Cir. 2008). Discrimination may be inferred when a similarly situated employee who is not within the

9

protected class was treated more favorably than the plaintiff. *See. e.g., Jones v. Sch. Dist. of Phila.,* 198 F.3d 403, 413 (3d Cir. 1999).

Once the plaintiff establishes a *prima facie* case for discrimination, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas,* 411 U.S. at 802. The burden then shifts back to the plaintiff to establish by a preponderance of evidence that the employer's articulated reason was a pretext for discrimination. *Id.; Sarullo v. U.S. Postal Serv.,* 352 F.3d 789, 797 (3d Cir. 2003). To defeat summary judgment, the plaintiff must demonstrate "some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

In evaluating the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has not established a *prima facie* case for gender discrimination. It is undisputed that Plaintiff is within a protected class as a female. See e.g., *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ*., 470 F.3d 535, 539 (3d Cir. 2006). It is also undisputed that Plaintiff was qualified for the position of Supervisor Customer Service. However, Plaintiff has failed to demonstrate that she suffered an adverse employment action.

The United States Supreme Court has held that an adverse employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). The Third Circuit has defined "an adverse employment action under Title VII as an action by an employer

that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004) (internal quotations and citations omitted). The definition of adverse employment action stems from the language of Title VII itself, which provides:

> It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. *Id.* (*citing* 42 U.S.C. § 2000e-2(a)(1) (emphasis removed)).

While it appears that the Third Circuit has not directly opined on the issue of whether rescinded discipline constitutes an adverse employment action under Title VII, district courts in this Circuit have held that a rescinded or unenforced employment decision does not constitute an adverse employment action. *See Wormack v. Shinseki*, 2010 U.S. Dist. LEXIS 109315 (W.D. Pa. October 14, 2010); *Gonzalez v. Potter*, 2010 U.S. Dist. LEXIS 53402 (W.D. Pa. June 1, 2010).

The decision of Chief Judge Lancaster of the United States District Court for the Western District of Pennsylvania in *Gonzalez v. Potter*, 2010 U.S. Dist. LEXIS 53402 (W.D. Pa. June 1, 2010) appears to be on all fours with the instant matter. In that case, Gonzalez, a letter carrier, sued the Postmaster General of the USPS for discrimination on account of her disability and her gender, as well as retaliation. The defendant conducted a pre-disciplinary interview on Gonzalez on June 3, 2008 regarding her alleged failure to report a motor vehicle accident that occurred while she was on duty. Gonzalez received a NPR on July 8, 2008. On September 17, 2008, the USPS sent Gonzalez a Letter of Decision that indicated that it intended to terminate Gonzalez as of October 28, 2008. Gonzalez filed a grievance in response to these documents. Subsequently, the NPR and Letter of Decision were rescinded on December 8, 2008. Gonzalez was never

11

disciplined. *Id.* at 2-4. Based on these facts and the relevant case law, the district court granted the defendant's motion to dismiss, holding, *inter alia*, Gonzalez failed to sufficiently allege that she suffered an adverse employment action. *Id.* at 16-18.

Similarly, the undisputed facts in this case demonstrate that Plaintiff never suffered a change in employment status serious or substantial enough to alter her compensation, terms, conditions, or privileges of employment. The NPR that Plaintiff received on December 30, 2008 explicitly states "[t]his is advanced written notice that it is proposed to remove you from the Postal Service no sooner than 30 calendar days from the date of your receipt of this letter." The NPR does not state that Plaintiff was terminated or would be terminated 30-days from the date of her receipt of her the letter. In fact, it rather clearly sets out Plaintiff's rights to appeal the proposed discipline and the procedure for doing so.

Plaintiff appealed the NPR pursuant to the internal grievance process of the USPS. Unlike the plaintiff in *Gonzalez*, the USPS did not issue a Letter of Decision indicating its intention to terminate Plaintiff. Rather, the USPS issued a Letter of Decision on April 3, 2009— less than four months after Plaintiff's receipt of the Proposed NPR—reducing the Notice of Proposed Removal to a Letter of Warning in Lieu of a Seven (7) Day Suspension. Plaintiff appealed the Letter of Warning in Lieu of a Seven (7) Day Suspension. By letter dated June 18, 2009, the USPS rescinded all discipline against Plaintiff.

While Plaintiff has attempted to create a factual dispute by asserting that it was her understanding that her job would be terminated upon receipt of the NPR, Lanza Cert. at ¶ 7, this contention is belied by clear language of the NPR, as described above, and by Plaintiff's own deposition testimony. Specifically, Plaintiff testified that, upon receipt of the NPR, she understood each of the following to be true: (1) that the NPR did not terminate her employment

with the USPS, (Lanza Dep., 98:6-9), (2) that she could return to work the following day, with the same pay in the same position, and (3) that she had the right to appeal the NPR within 30 days. (Lanza Dep., 95:6-98:15, 109:14-110:15). Plaintiff also testified that she was never told not to return to work; Nor was she ever told that she had been demoted at any point between December 2008 and June 2009. (Lanza Dep., 106:20-107:7, 110:16-111:5).

Finally, Plaintiff absolves Defendants of responsibility by conceding on the record that her leave was not imposed by the USPS; but, rather she chose not to return to work under the circumstances. When asked whether it was her understanding that she was not supposed to come to work after receiving the NPR, Plaintiff testified, "I didn't come to work the next day because I couldn't do it. I was too sick to come to work. I'm still too sick to work for [USPS] right now." (Lanza Dep., 97:24-98:4). Even so, Plaintiff's health does not impact this analysis, which turns on evidence of adverse employment action, or the lack thereof. Plaintiff has failed to offer any actual evidence to suggest that Defendants significantly altered her employment status by serving here with the NPR, or that they hindered her return to work in any way. Plaintiff has failed to demonstrate that a genuine issue of material fact exists for trial, thus Defendants are entitled to judgment as a matter of law.

Where Plaintiff is unable to state a prima facie case for discrimination under Title VII, the Court must grant summary judgment in favor of Defendant on Plaintiff's Title VII claims.

### C. The Americans with Disabilities Act ("ADA")

Plaintiff contends that Defendants' conduct violates the ADA. However, federal law expressly precludes application of the ADA to the USPS. *Hawthorne v. Potter*, 2006 U.S. Dist. LEXIS 3556 (D.N.J. Jan. 30, 2006); see 42 U.S.C. § 12111(5)(B)(i)(excluding the United States or a corporation wholly owned by the U.S. government from coverage as "employers" under the

ADA). "The Rehabilitation Act, not the Americans with Disabilities Act (ADA), constitutes the exclusive remedy for a federal employee alleging disability-based discrimination." *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007). As an employee of the USPS, only Plaintiff's claims under the Rehabilitation Act are properly before this Court.

### D. Rehabilitation Act

"The Rehabilitation Act expressly makes the standards set forth in the 1990 Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., applicable to federal employers and to employers receiving federal funding." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007) (*citing* 29 U.S.C. § 791(g)). "[T]he Rehabilitation Act "forbids employers from discriminating against persons with disabilities in matters of hiring, placement, or advancement." *Id.* (*citing Shiring v. Runyon*, 90 F.3d 827, 830-31 (3d Cir. 1996)). "To establish a prima facie case of discrimination under the Rehabilitation Act, a plaintiff must initially show, (1) that he or she has a disability; (2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he or she was nonetheless terminated or otherwise prevented from performing the job." *Id.* at 184-85 (*citing Shiring*, 90 F.3d at 831). The familiar framework established in *McDonnell Douglas* for Title VII cases, which the Court previously set forth in its analysis of Plaintiff's Title VII claim, is equally applicable to discrimination claims under the Rehabilitation Act. *Id.* at 185.

Plaintiff contends that she was subjected to unlawful discrimination on the basis of her disability in violation of the Rehabilitation Act. Defendants posit that Plaintiff has failed to establish a *prima facie* case of disability discrimination, as Plaintiff was never terminated or otherwise prevented from performing her job. Defendants also contend that Plaintiff has failed

to establish that any comparable employees were treated differently than she was, as Plaintiff and Lagana are not similarly situated employees.

For the reasons outlined above in this Court's Title VII analysis, Plaintiff's claim fails in the absence of adverse employment action by Defendants. Accordingly, the Court must grant Defendants summary judgment on Plaintiff's claim under the Rehabilitation Act.

### E. Retaliation

Plaintiff alleges that Defendants retaliated against her for maintaining limited duty assignment and/or for settling a worker's compensation claim stemming from a workplace injury that occurred in March 2006. Pl.'s Am. Comp. ¶¶ 30-31 (ECF No. 12); Pl.'s Opp. to Summ. J. at 32 (ECF No. 21). Defendants maintain that they should be awarded summary judgment on Plaintiff's retaliation claim because Plaintiff did not engage in protected activity prior to the issuance of any discipline and cannot establish a causal nexus between any alleged protected activity and alleged discriminatory animus by the Defendants.

Title VII states: "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

"To establish a prima facie case of retaliation under Title VII, a plaintiff must tender evidence that: (1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Hunter v. Filip*, 514 Fed. Appx. 206, 209 (3d Cir. N.J. 2013)(*quoting Moore v. City of Phila.*, 461 F.3d 331, 340-41

(3d Cir. 2006)). "If the employee establishes this prima facie case of retaliation, the familiar *McDonnell Douglas* approach applies in which the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its conduct and, if it does so, the plaintiff must be able to convince the fact finder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Moore*, 461 F.3d at 342 (*citing Krouse*, 126 F.3d at 500)(internal quotation marks omitted).

For the reasons outlined earlier in this Court's analysis, Plaintiff is unable to make a prima facie case for retaliation given the absence of adverse employment action by Defendants. Her retaliation claim fails accordingly.[7] Defendants are granted summary judgment on Plaintiff's claims of retaliation.

---

[7] Furthermore, the Court finds that Plaintiff has not engaged in protected activity under Title VII for the following reasons: Plaintiff filed her first complaint of discrimination six days after she received the NPR. Prior to completing that form, Plaintiff had never filed any documents with the USPS claiming gender or disability discrimination. Plaintiff also conceded that she was never subjected to any employment discrimination based on her gender or any alleged disability from the time she began working at the RBPO until December 9, 2008.

**ORDER**

This matter having come before the Court on a Motion for Summary Judgment [ECF No. 20] by Defendants Patrick R. Donahoe and the United States Postal Service; and for the reasons set forth above;

IT IS on this 30th day of September;

ORDERED that Defendants' Motion for Summary Judgment is GRANTED.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.